**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **FRANKIE SIMS and PATSY SIMS ,**<br>**on behalf of themselves and all others**<br>**similarly situated,** | § <br> § <br> § <br> § <br> § | |
| ***Plaintiffs,*** | § <br> § | **CIVIL ACTION NO. 4:12-cv-00087** |
| v. | § <br> § | |
| **CARRINGTON MORTGAGE**<br>**SERVICES, LLC** | § <br> § <br> § | |
| ***Defendant.*** | § | |

<u>**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**</u>

Plaintiffs Frankie and Patsy Sims ("Plaintiffs"), by and through their attorneys,

bring this action on behalf of themselves and all others similarly situated against

Carrington Mortgage Services, LLC ("Defendant" or "CMS"). Plaintiffs hereby allege,

on information and belief, except as to those allegations which pertain to the named

Plaintiffs, which allegations are based on personal knowledge, as follows:

**NOTICE OF CURE PERIOD UNDER
TEX. CONST. ART. XVI § 50 ("Section 50")**

This hereby constitutes notice, to the extent required, under Tex. Const. art. XVI

§ 50(a)(6)(Q)(x), of Defendant Carrington Mortgage Service's mass violations of

Section 50, including but not limited to Sections 50(a)(6)(B) and (F) and Section 50(f).

CMS has, without limitation, increased home equity loan principal without a full Section

50 refinance, increased the loan-to-value ratio to exceed 80%, and improperly extended

credit under a closed-end loan from time to time. If CMS is not already legally or

equitably barred, by virtue of Plaintiffs' the Sims' prior notice to CMS or CMS's failure

to provide disclosures, from demanding individualized notice from Texas home equity

borrowers who have received modifications that violate Section 50, then this Notice is

asserted on behalf of all such borrowers, who cannot reasonably be expected

individually to challenge a systemic practice of CMS that worked to conceal the illegal

practices complained of. Borrowers with such modifications are unlikely to appreciate

the requirement of notice by virtue of the failure of CMS to apprise them of that right in

the modifications at issue.

## I. INTRODUCTION:
### ADDING NEW PRINCIPAL TO A TEXAS
### HOME EQUITY LOAN REQUIRES A FULL-BLOWN REFINANCE

1.      Texas created the concept of homestead protection in 1839 when Texas

was an independent republic. When it became a state, it enshrined homestead protection

in its constitution. Texas protected new settlers' homesteads from the reach of distant

creditors, making Texas a haven for settlement from over-reaching creditors in a

migration pattern that continues to this day.[1]

2.      Most indigenous Texas banks disappeared between 1985 and 1995, so

nearly all mortgage lenders doing business in Texas are now controlled by out-of-state

institutions and conglomerates.[2] Nevertheless, any mortgage lender that does business in

Texas had better learn Texas' unique homestead protection laws or risk losing its liens,

its loans, or both. This lawsuit tells the story of a large, out-of-state loan servicer that

---

[1] *See generally* Boettcher, *Taking Texas Home Equity for a Walk*, 30 Tex. Tech. L. Rev.
197, 1999; Forrester, *Home Equity Loans in Texas: Maintaining the Texas Tradition of
Homestead Protection*, 55 S.M.U. L. Rev. 157, Winter 2002.
[2] *See* Boettcher at 204.

ignored or failed to study the homestead protection provisions of the Texas Constitution even after being notified by Plaintiffs of violations of those provisions.

3.      In the particular case of home equity loans -- which weren't even allowed in Texas until 1997 -- the requirements imposed on lenders are stringent, and the penalties for non-compliance severe. If a lender doesn't comply, it risks forfeiting its loans. And if a lender has failed to appreciate the meaning of the law, it is likely to make the same mistake with every home equity loan it issues or services.

4.      The people and the legislature of Texas have decided that allowing home equity -- an intangible, evanescent thing based on market value -- to be monetized for conversion to tangible goods such as cars, televisions, and washing machines should be difficult so that Texans don't lose their homes for the sake of *non-homestead consumer-goods purchases*. Therefore, predatory lending practices such as refinancing home equity debt on the fly by rolling past-due interest into a new principal is *strictly not allowed*. Such practices merely postpone foreclosure and balloon the principal, allowing the lender to earn interest on the interest -- a classic debt spiral.

5.      In Texas, adding unpaid interest in the form of principal to an existing home equity loan requires an outright refinance of the loan, entailing all the formalities of a new home equity loan.[3] In that way, a lender cannot undermine the constitutional scheme for the protection of the homestead by simply "modifying" a loan after an initial home equity loan has been made. Otherwise, the constitutional scheme wouldn't have teeth: a lender could willy-nilly "modify" a home equity loan to get around important

---

[3] Mortgage loans used for the purchase of a home in the first instance are not at issue in this case.

restrictions such as the maximum loan-to-value ratio of 80% and the prohibition on open-ended forms of credit that never get paid down.

6.     The permissible way to refinance a home equity loan to add past-due interest into principal, by contrast, may only occur a maximum of once yearly and must comply with all the home equity loan rules just as if it were an entirely new home equity loan. *The principal of a Texas home equity loan may only be increased a maximum of once annually and only through means that comply with all the homestead protection provisions of Article XVI Section 50 of the Texas Constitution.*

7.     Between approximately 2000 and 2011, CMS set about modifying home equity loans to include past-due interest and other charges in new, restated, increased principal. This process postponed foreclosure but increased the size of the borrower's debt. Borrowers then paid interest on the formerly past-due interest. Loan-to-value ratios shot past the permissible 80%. Loans without personal recourse that otherwise would have ceased performing, secured by properties worth less than the loans, continued producing payments they otherwise would not have -- and *should not* have. These practices violated the homestead provisions of the Texas Constitution.

8.     Plaintiffs notified Carrington in November, 2011, in court filings as of record in Tarrant County, Texas, that Carrington had acted wrongfully or fraudulently in modifying Texas home equity loans to increase principal. Far from correcting this error and curing the loan of Plaintiffs and others, Carrington willfully compounded the error by modifying Plaintiffs' loan *again* in early 2012 to include *still more* past-due interest, principal, and other charges without a Section 50-compliant refinance.

9.      Plaintiffs, victims of Carrington's practices, therefore bring this action against Carrington on behalf of all Texas resident home equity loan borrowers who received so-called "modifications" from Defendant, which acted as the lender or servicer of home equity loans. Defendant modified Texas home equity loan modifications in ways that did one or more of the following in violation of the Texas Constitution's homestead protection provisions:

    a.  transformed past-due interest and other charges into new, increased principal;

    b.  featured a loan-to-value ratio to a figure above 80% at the time of the "modification"; and

    c.  failed to otherwise comply with the various requirements imposed on home equity loans by the Texas Constitution, such as mandatory notice of the home equity lending laws and all the other requirements for effecting a home equity refinancing.

10.      Specifically, Defendant's home equity loan refinancings or "modifications" violated the following provisions of the Texas Constitution:

- **Art. XVI Sec. 50(a)(6)(B)**. The home equity loan refinancings or modifications featured a loan-to-value ration in excess of 80%, the maximum allowed by Texas Constitution.

- **Article XVI Sec. 50(a)(6)(F).** The refinancings or modifications were a form of open-end account under which credit was extended from time to time but which was not a valid home equity line of credit under other provisions of the Texas Constitution;

- **Art. XVI Sec. 50(f).** The home equity loan "modifications" were really refinancings that did not comply with the requirements for refinancing a home equity loan;

- **Article XVI Sec. 50(g).** Defendant failed to provide the mandatory disclosures attendant upon a refinance of a home equity loan.

11.     Violations of the relevant provisions of the Texas Constitution result in the lender's forfeiture of the loans and/or inability to revive the lien, among other penalties. Under certain circumstances, a lender may cure deficiencies by reworking loans to bring them into compliance with the Texas Constitution, but not where it has failed to cure the defects 60 days after receiving notice or is otherwise equitably or legally barred from asserting notice rights by its own misconduct.

12.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated asserting violations of the Texas Constitution Articles XVI Sections 50(a)(6)(B), 50(a)(6)(F),  50(f), and 50(g), without limitation. Plaintiffs seek damages and equitable relief on behalf of the Class, which relief includes forfeiture of loan balances; invalidation of liens; a payment by Defendants of $1,000.00 per subject loan; refinance, modification, or remedy that otherwise complies with the Texas Constitution; disgorgement of all payments made by borrowers under the illegal home equity loan modifications; interest and charges incurred by or assessed against class members during the pendency or processing of a loan refinance or modification; a permanent injunction halting foreclosure on class members' homes securing the subject home equity loans; costs and expenses, including attorney's fees and expert fees; and any additional relief

that that Court determines to be necessary to provide complete relief to Plaintiffs and the

Class.

## II. PARTIES

13.      Plaintiffs Frankie and Patsy Sims are a married couple and were at all

relevant times citizens of the State of Texas, residing at 3419 N.W. 26th Street, Fort

Worth, Tarrant County, Texas 76106.

14.      Defendant Carrington Mortgage Services, LLC, is a citizen of California

for diversity purposes. It may be served with service of process on its registered agent in

Texas for service of process, C T Corporation System  350 N. St. Paul St., Ste. 2900

Dallas, TX 75201-4234 USA .

## III. JURISDICTION AND VENUE

15.      The court has subject matter jurisdiction over the lawsuit under 28 U.S.C.

§1332(d), the Class Action Fairness Act, because the suit is a class action, the parties are

minimally diverse, and the amount in controversy exceeds $5 million, excluding interest

and costs.

16.      The court has personal jurisdiction over Defendant because it

purposefully availed itself of the privilege of conducting activities in Texas through

lending and loan servicing involving residents of Texas.

17.      Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a

substantial part of the events or omissions giving rise to this claim occurred in this

district.

## IV. FACTS

## -- HOME EQUITY LOAN MODIFICATIONS

18.     Defendant Carrington services home loans in Texas and elsewhere on behalf of various lenders.

19.     Carrington added or advanced past-due interest into a new, increased principal amount under the subject home equity loans notes via a procedure and accompanying document styled as a "modification."

20.     Such "adding" or advancement by the lender of the past-due interest as new principal is impermissible under the Texas Constitution short of renewed compliance with the home equity loan rules.  Home equity loan principal is fixed as of the date the home equity loan was first made; it cannot increase after that date unless there is a refinance or new Section 50-compliant loan event.[4] Consumers cannot under any circumstance take more than 80% of the value of their homes out with any home equity loan, whether originally or through a subsequent transaction, no matter how it's papered.[5]

21.     In Carrington's "modification" process, Defendant knew the "modification" created a loan-to-value ratio in excess of 80% yet it modified the loan anyway. Crossing the 80% loan-to-value threshold with a "modification" or refinance that adds to principal is not permissible.[6] Otherwise, the Texas Constitution's scheme for preventing high loan-to-value ratios through lender advances would be meaningless.

---

[4] T.A.C. § 153.3(2). ("The principal balance of all outstanding debt secured by the homestead on the date the extension of credit is made determines the maximum principal amount of an equity loan.").

[5] See generally, House Research Organization, Bill Analysis of HJR 31, 5/9/97.

[6] T.A.C. § 153.14(2)(C) ("A modification of an equity loan may not provide for new terms that would not have been permitted by applicable law at the date of closing of the extension of credit.").

22.     Defendant's "modification" is in reality a non-conforming "refinance" because it added or advanced past-due interest owed by the borrower into new principal. As such, the "modification" complies with few if any of the many requirements for a refinance of a home equity loan under the Texas Constitution. Among other things, it does not contain the mandatory disclosures for a home equity loan required by Art. XVI Sec. 50(g), which would have informed borrowers of all the protections afforded by the Texas Constitution, including borrowers' right to make a demand for Defendant to cure the defective loan modification.

23.     In addition, Defendant's "modification" turned the existing home equity loan into "a form of" open-ended account under which Defendant was extending credit from time to time -- i.e., rolling incurred interest into new principal on an as-needed basis. This violated Art. XVI Sec. 50(a)(6)(F).

24.     Where a borrower has incurred past-due interest under a Texas home equity loan, that past-due interest is a debt owed to the lender. The past-due interest is a monetized obligation owed by the borrower to the lender. For the lender to roll that sum into new principal is an "advancement of additional funds" to the borrower no different than any other increase to principal. The Texas Constitution requires that any increase in principal to a home equity loan comply with all the formalities of any other home equity loan. Otherwise, lenders would sidestep the constitutional requirements by issuing "modifications" whenever they wished. The strict requirements on maximum principal and no-more-frequently-than-annual refinancings would be rendered meaningless.

25.     After Defendant learned or determined it had violated the Texas Constitution with these sorts of home equity loan modifications in November, 2011, it

did not attempt to cure the problem by going back to rework the loans. It continued issuing illegal modifications.

## -- THE TEXAS CONSTITUTION'S HOMESTEAD PROTECTIONS

26.     The Texas home equity rules at Art. XVI Sec. 50 are structured as eight exceptions to the general rule that homesteads are protected from forced sale. Tex. Const. Art. XVI Secs. 50(a)(1)-(8). Purchase-money mortgages are a familiar first on the list of exceptions. Other exceptions include refinances generally, reverse mortgages, taxes due, and construction loans. Home equity loans are number six, at Sec. 50(a)(6).[7]

27.     Important broad features of allowable home equity loans are set out at Sec. 50(a)(6)(A)-(Q). Among these are that:

a.  they are voluntary;

b.  they don't exceed an 80% loan-to-value ratio;

c.  they are without recourse -- i.e., the borrowers has no personal liability in the event of default, unlike purchase-money mortgages, where a borrower can be pursued for a deficiency;

d.  a court order is required for foreclosure -- i.e., there are no non-judicial sales;

e.  they are not any form of open-ended credit where additional principal is added or advanced from time to time;

f.  they must be repaid in equal installments that are fully amortized -- i.e., there's a schedule of payments that pays down principal and all presently-due interest with each payment;

---

[7] Home equity lines of credit fall under the rubric of home equity loans generally, but they have their own unique requirements at Sec. 50(t).

28.    Sections 50(b)-(v) contain various other requirements that put home equity loans in a tightly-cinched straightjacket. Most important for purposes here, there are provisions that prevent a lender from doing an end-run-around the requirements at Section 50(a)(6)(A)-(Q). Thus:

a.  Any refinance of a home equity loan is itself a home equity loan, triggering all the requirements for a new, valid home equity loan no matter how it is styled -- as a modification, a refinance, or just as a home equity loan. Sec. 50(a)(6)(f).

b.  A borrower may not refinance a home equity loan more than once annually. Sec. 50(a)(6)(M)(iii).

29.    Article XVI Section 50(x) sets out a number of penalties for violations of Section 50, including forfeiture of loans to victimized borrowers.

30.    According to the authorized agency interpretations of the various provisions cited above, codified in the Texas Administrative Code, a "modification" of a home equity loan cannot advance additional funds to a borrower or violate the other restrictions on home equity loans:

> The advance of additional funds to a borrower is not permitted by modification of an equity loan.
>
> A modification of an equity loan may not provide for new terms that would not have been permitted by applicable law at the date of closing of the extension of credit.

T.A.C. § 153.14(2)(B)-(c).

31.    A modification *may* permissibly change the payment terms, but since there may not be additional principal, borrowers with past-due interest either have to bring their loans current, or the lender or servicer has to waive the interest arrears. The

Texas Joint Financial Regulatory Agencies issued an explicit advisory to this effect in April, 2009.[8]

32.     CMS nevertheless gave Texas home equity loan borrowers illegal "modifications" that included past due interest, exceeded the 80% loan-to-value ratio, and in other ways failed to comply with the above provisions of the Texas constitution in that they constituted refinancings or impermissible modifications.

33.     CMS billed borrowers and accepted payments under the illegal home equity loan "modifications" even in instances where CMS didn't provide the borrower a final fully-executed copy of the modification, thereby proving CMS's acceptance of the modification contracts.

34.     CMS never disclosed to home equity loan borrowers, even after the Joint Financial Regulatory Agencies' bulletin of April 2009, and even after CMS knew or should have known of all the problems with the "modifications," or in fact had notice of the problems, that these home equity loan modifications violated the Texas Constitution in various ways.

35.     CMS never disclosed the 80% loan-to-value issue to borrowers. CMS never provided the mandatory disclosures that would educate the borrowers about the flaws and borrowers' rights. CMS did not apprise borrowers that interest forgiveness for the arrears could cure part of the problem; nor did CMS offer interest forgiveness; nor when borrowers sought interest forgiveness was that granted. Instead, if one of the

---

[8] Document available at http://www.fc.state.tx.us/homeinfo/modibulletin.pdf. *See also* Texas Joint Financial Regulatory Agencies, *Home Equity Modification Interpretation Letter*, December 20, 2001 (accessed at: http://www.occc.state.tx.us/pages/consumer/education/HE_mod_ltr.htm).

illegal loan "modifications" went into default, CMS would either modify it illegally

again or else file for foreclosure on a lien it no longer had.

### -- THE SIMS' SERIAL HOME EQUITY LOAN MODIFICATIONS

36.     The Sims got a home equity loan for $76,000.00 in August, 2003.

37.     As of mid-2009, they had fallen behind on their payments. They entered

into a "Loan Modification Agreement" with CMS on September 25, 2009, that increased

the principal balance of the loan by at least $2,200.00, to $74,345.50.[9] Based on the

Tarrant County appraisal of the property for 2009 at $72,300, the loan-to-value ratio

exceeded 100%.

38.     When the Sims fell behind again under this modification in 2011, CMS

filed an expedited foreclosure proceeding in Tarrant County, Texas (Cause. No. 348-

255349-11).

39.     On November 3, 2011, Plaintiffs filed a Motion for Continuance

specifying in detail the basis for their request their objections that the 2009 loan

modification violated Section 50 by adding principal to the loan without due Section 50

formalities and conformity.[10]

40.     In response to this, CMS dismissed the foreclosure proceeding and

modified the Sims' home equity loan again to add $7,368.44 to principal to form a "new

principal balance" of $80,023.95.[11] The Tarrant County appraisal for 2011 was

$73,000.00, indicating a loan-to-value ratio of 110%. CMS's own valuation of the

---

[9] Exhibit A.
[10] Exhibit B.
[11] Exhibit C.

property was $76,100.00 and recited a 103.8% loan-to-value ratio.[12] CMS billed the

Sims' the 2011 modification amount and accepted those payments.[13]

## V. CAUSE OF ACTION

### A.  VIOLATIONS OF THE TEXAS CONSTITUTION ART. XVI § 50

41.     Plaintiffs re-allege and incorporate by reference the allegations contained

in the paragraphs above as if fully set forth herein.

42.     In doing the following, CMS has violated various provisions of the Texas

Constitution Art. XVI Sec. 50:

   a.  making home equity loan modifications that added or advanced past-due

       interest into a new home equity loan principal under the relevant note without

       fulfilling all the prerequisites of Art. XVI Sec. 50 for a valid, enforceable

       home equity loan;

   b.  making home equity refinancings or modifications that exceeded an 80%

       loan-to-value ratio;

   c.  making home equity loan refinancings, though styled as "modifications," that

       did not fulfill most or all the prerequisites of Art. XVI Sec. 50 for a valid,

       enforceable home equity loan.

43.     CMS's failure to provide the mandated constitutional disclosures at the

time of the modification, which was in essence a noncompliant Section 50 refinance,

also meant that borrowers were not apprised of the notice and cure provisions of the

Texas Constitution, legally or equitably barring CMS from now seeking cure rights.

---

[12] Exhibit D.
[13] Exhibit E.

44.     CMS has been aware of the constitutional defects with its loans since November, 2011. CMS did not cure the defects timely even after it learned of them.

45.     Instead, CMS continued the illegal behavior the Sims had placed it on notice of.

## B. REQUEST FOR PRELIMINARY INJUNCTION

46.     Plaintiffs and the class will likely suffer irreparable injury if defendant is not enjoined while this suit is pending from illegally modifying Texas home equity loans to include past-due interest. Since CMS has no enforceable liens on these borrowers' properties, CMS cannot foreclose. The loss of the homestead real property constitutes irreparable injury.

47.     There is no adequate remedy at law because money cannot compensate for the loss of a homestead and its attendant human dislocations and personal and emotional devastation.

48.     There is a substantial likelihood that plaintiff will prevail on the merits because Defendant's misconduct is plain and apparent on the loan documentation. The court would have to decide that a lender may sidestep the Texas Constitution's homestead protections by styling refinancings of home equity loans as mere "modifications." Plaintiffs respectfully submit that that is highly unlikely to be the ultimate result in this litigation.

49.     The harm faced by plaintiff outweighs the harm that would be sustained by defendant if the preliminary injunction were granted. Defendant instituted a system or practice of modifying loans; it can equally well institute a system to identify and evaluate the loan modifications that violate the law, and to cease making such

modifications going forward. Plaintiffs and prospective class members, by contrast, suffer individualized harm of a devastating, irreparable kind. Plaintiffs believe that hundreds of Texans have been victimized by Defendant's system or practice. That harm far outweighs any administrative difficulties Defendant faces in correcting its illegal practices.

50.     Issuance of a preliminary injunction would not adversely affect the public interest. Defendant's practice of modifying loans to include past-due interest in an increased, restated principal and loan-to-value ratios in excess of 80% does not, as a matter of law, "help" borrowers. It undermines the Texas Constitution's homestead protection provisions, which in the aggregate protect all Texas home equity borrowers.

51.     Plaintiffs recommend a nominal bond in light of the harms involved and the financial distress of this class of persons.

52.     Plaintiffs ask the court to set their application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against defendant.

## C. REQUEST FOR PERMANENT INJUNCTION

53.     Plaintiffs ask the court to set their application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against defendant.

## VI. CLASS ACTION AVERMENTS

54.     Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to Rule23(b)(3) of the Federal Rules of Civil Procedure.

55.     The proposed class consists of all Texas residents whose home equity loans have been serviced by CMS, where those borrowers received from CMW either or both of the following a modification of their home equity loan that added or advanced past-due interest into the principal but did not otherwise meet the formal requirements for a refinance of a home equity loan under Article XVI Section 50 of the Texas Constitution.

56.     This action is properly brought as a class action for the following reasons:

a.     the proposed class is so numerous that the joinder of all class members is impracticable. While Plaintiffs do not know the exact number and identity of all class members, Plaintiffs believe that there are hundreds or thousands of class members based on the size of CMS's lending and servicing operations. The precise number of members can only be ascertained through discovery, which will include Defendant's loan servicing and other business records;

b.     There are questions of law or fact common to the class. Such common questions include, but are not limited to:

a.     whether Defendant offered home equity loan modifications to borrowers with interest arrearages;

b.     whether Defendant modified Texas home equity loans in violation of the Texas Constitution Article XVI Section 50(a) by adding or advancing past-due interest into a new or restated principal;

c. whether Defendant refinanced or modified Texas home equity loans in violation of the Texas Constitution Article XVI Section 50(s) and in so doing permitted those loans to exceed an 80% loan-to-value ratio or otherwise increasing the principal at the time of the modification or refinance;

d. whether Defendant modified Texas home equity loans in violation of the Texas Constitution Article XVI Section 50(g) by modifying loans without making the mandatory disclosures at the time of the modifications;

e. whether Defendant made "modifications" that were in reality improper refinancings in that they increased principal without due formalities;

f. whether Defendant learned of the above violations in November, 2011;

g. whether Defendant filed foreclosure actions in cases where it had already lost its lien owing to prior illegal home equity loan modifications;

h. whether Defendant failed to cure the violations in the manner afforded by the Texas Constitution Art. XVI Sec. 50(A)(6)(Q)(x) within 60 days of being on notice thereof;

i. whether Defendant, after learning of the violations, continued illegally modifying home equity loans;

  j. whether Defendant has in fact foreclosed on and sold homesteads on which Defendant had no lien to enforce owing to prior illegal home equity loan modifications that impermissibly increased principal;

  k. whether Defendant is equitably barred, stemming from its misconduct or its prior notice, from asserting that it still retains the 60-day cure rights afforded to lenders without notice under Tex. Constitution Art. XVI Sec. 50(A)(6)(Q);

  l. whether, despite Defendant's misconduct that would otherwise trigger loan forfeitures and invalidated liens, appropriate relief to the proposed class is the forgiving of all past-due interest that Defendant added or advanced into its illegal refinancings or modifications; the forgiving of all other fees and charges that it would be unfair under the circumstances to make borrowers bear; and the re-working of all the illegally-modified loans to conform to the requirements of law.

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiffs and all class members have been injured by the same wrongful practices of Defendant. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories.

d. The representative parties will fairly and adequately protect the interests of the class in that they have no interests antagonistic to those of the other

proposed class members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel.

e.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    a.  Given the size of individual proposed class member's claims, the expense of litigating those claims, and the impaired finances of proposed class members, few, if any, proposed class members could afford to or would seek legal redress individually for the wrongs Defendant committed against them and absent proposed class members have no substantial interest in individually controlling the prosecution of individual actions;

    b.  A proposed class action involving the same illegal practices but involving a different lender/servicer is pending in the Western District of Texas. *Hawkins et al. v. Wells Fargo Bank N.A.*, Cause No. 1:11-cv-877-LY. This proposed class action may prove suitable for consolidation with *Hawkins* if and when *Hawkins* is certified for class treatment.

    c.  This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured; and

    d.  Without a class action, proposed class members will continue to suffer damages, and Defendant's violations of law will proceed

without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct.

e.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

f.  Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this class action.

g.  Plaintiffs seek damages and possible equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

h.  The disposition of Plaintiffs' and proposed class members' claims in a class action will provide substantial benefits to both the parties and the Court.

i.  The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court enter a judgment against Defendant that:

A.  This action be certified and maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify the proposed class as defined, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

B.  Awards actual, general, special, exemplary, Texas constitutional, statutory, and other damages and remedies as to all Causes of Action where such relief is permitted;

C.    Awards Plaintiffs and proposed class members the costs of this action, including reasonable attorneys' fees and expenses;

D.    Orders Defendant to immediately cease the wrongful conduct set forth above; enjoins Defendant from continuing to engage in deception, conceal material information, and conduct business via the unlawful business acts and practices complained of herein; orders Defendant to engage in a corrective notice and loan reformation campaign, and requires Defendants to refund to Plaintiffs and all of the class members payments made under the illegal modification agreements;

F.    Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendant's ill-gotten gains;

G.    Awards pre-judgment and post-judgment interest at the legal rate;

H.    Orders any appropriate declaratory relief; and

I.    Such further legal and equitable relief as this Court may deem just and proper.


**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.


DATED: February 15, 2012.

_____

J. Patrick Sutton
Texas Bar No. 24058143
1706 W. 10th Street
Austin, TX 78703

ph (512) 417-5903
f (512) 355-4155

David M. Gottfried
Texas Bar No. 08231200
The Law Office of David M. Gottfried, PC
1505 W. 6th Street
Austin, TX 78703
Tel. (512) 494-1481
Fax (512) 472-4013

Attorneys for Plaintiffs