```
                                        U.S. DISTRICT COURT
                                      NORTHERN DISTRICT OF TEXAS
   IN THE UNITED STATES DISTRICT COURT        FILED
       NORTHERN DISTRICT OF TEXAS
          FORT WORTH DIVISION              AUG 2 3 2012

                                      CLERK, U.S. DISTRICT COURT
                                      By_____
                                                Deputy
```

FRANKIE SIMS, ET AL.,            §
                                 §
         Plaintiffs,             §
                                 §
VS.                              §   NO. 4:12-CV-087-A
                                 §
CARRINGTON MORTGAGE SERVICES,    §
LLC,                             §
                                 §
         Defendant.              §

## MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the motion to dismiss pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed in
the above-captioned action by defendant, Carrington Mortgage
Services, LLC.  Plaintiffs, Frankie Sims and Patsy Sims, filed
their response, and defendant filed a reply.  Plaintiffs also
filed two documents, each titled "Notice of Supplementary
Authority Relative to the 12(b)(6) Record."  Having now
considered all of the parties' filings, as well as the applicable
legal authorities, the court concludes that the motion should be
granted.

### I.

### Plaintiffs' Allegations

Plaintiffs initiated this action by the filing on February
15, 2012, of their original class action complaint, and on

February 17, 2012, filed their first amended class action complaint ("First Amended Complaint").  Plaintiffs also filed a motion for class certification.

The First Amended Complaint makes the following factual allegations:

Defendant services loans on behalf of various lenders in Texas and elsewhere.  In August of 2003 plaintiffs obtained a home equity loan in the amount of $76,000.  By the middle of 2009 plaintiffs were behind on their payments.  Consequently, on September 25, 2009, plaintiffs signed a document titled "Loan Modification Agreement," the terms of which added approximately $2,200 of past-due interest to the principal, increasing the principal amount due on the loan to $74,345.50.  At the time plaintiffs signed the Loan Modification Agreement Tarrant County had appraised their property at $72,300.

When plaintiffs again fell behind on their home equity loan payments in 2011, defendant filed an expedited foreclosure proceeding in the state district court of Tarrant County, Texas. On November 3, 2011, plaintiffs filed a motion for continuance in the state court action alleging that the 2009 modification violated Article XVI, § 50(a)(6)(L) of the Texas Constitution.

In response to the motion for continuance defendant dismissed the foreclosure proceeding and again modified

plaintiffs' home equity loan.  The second modification agreement, dated December 9, 2011, added approximately $7,368.44 of past-due interest to the principal, resulting in a new principal balance of $80,023.95.  The 2011 Tarrant County tax appraisal of plaintiffs' property was $73,000.00, while defendant's valuation of the property was $76,100.00.

Based on the foregoing, plaintiffs alleged that defendant violated the following provisions of the Texas Constitution:

- **Art. XVI Sec. 50(a)(6)(B).**  The home equity loan refinancings or modifications featured a loan-to-value ratio[] in excess of 80%, the maximum allowed by [sic] Texas Constitution.

- **Article XVI Sec. 50(a)(6)(F).**  The refinancings or modifications were a form of open-end account under which credit was extended from time to time but which was not a valid home equity line of credit under other provisions of the Texas Constitution;

- **Art. XVI Sec. 50(f).**  The home equity loan "modifications" were really refinancings that did not comply with the requirements for refinancing a home equity loan;

- **Article XVI Sec. 50(g).**  Defendant failed to provide the mandatory disclosures attendant upon a refinance of a home equity loan.

First Am. Compl. at 6.

II.

## Grounds of Defendant's Motion

Defendant contends that dismissal is warranted as to plaintiffs' claims pursuant to sections 50(f) and 50(g) of article XVI because those sections pertain only to a refinance of a home equity loan, and plaintiffs' loan was modified, not refinanced. Defendant further argues that the court should dismiss plaintiffs' claims under section 50(A)(6)(B) because the modifications complied with the requirements therein, and that dismissal is warranted as to plaintiffs' claims under section 50(A)(6)(F) because the modifications did not convert plaintiffs' home equity loan into a form of open-end account as contemplated by that section.

III.

## Standards Applicable to Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need

4

not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action.  <u>Id.</u> at 555 & n.3.  While a court must accept all of
the factual allegations in the complaint as true, it need not
credit bare legal conclusions that are unsupported by any factual
underpinnings.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)
("While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to
state a claim under Rule 12(b)(6), the facts pleaded must allow
the court to infer that the plaintiff's right to relief is
plausible.  <u>Id.</u> at 678.  To allege a plausible right to relief,
the facts pleaded must suggest liability; allegations that are
merely consistent with unlawful conduct are insufficient.
<u>Twombly</u>, 550 U.S. at 566-69.  "Determining whether a complaint
states a plausible claim for relief . . . [is] a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

In adjudicating defendant's motion, the court may consider
the complaint and its proper attachments.  <u>Collins v. Morgan</u>
<u>Stanley Dean Witter</u>, 224 F.3d 496, 498 (5th Cir. 2000).  The
court may also consider documents attached to defendant's motion

to dismiss, as long as those documents are referred to in the

complaint and are central to plaintiff's claims.  <u>Id.</u> at 499.

IV.

<u>Analysis</u>

A.   <u>Home Equity Lending and the Texas Constitution</u>

Although long proscribed by Texas law, voters in 1997

approved an amendment to the Texas Constitution permitting home

equity lending.  As explained by the Texas Supreme Court:

> For over 175 years, Texas has carefully protected
> the family homestead from foreclosure by limiting the
> types of liens that can be placed upon homestead
> property.  Texas became the last state in the nation to
> permit home-equity loans when constitutional amendments
> voted on by referendum took effect in 1997.  Such loans
> permit homeowners to use the equity in their home as
> collateral to refinance the terms of prior debt and
> secure additional loans at rates more favorable than
> those for consumer loans.  Although home-equity lending
> is now constitutionally permissible, article XIV [sic],
> section 50(a)(6) of the Texas Constitution still places
> a number of limitations on such lending.

<u>LaSalle Bank Nat'l Ass'n v. White</u>, 246 S.W.3d 616, 618 (Tex.

2007).  Section 50 protects a homestead from "forced sale, for

the payment of all debts" except for those specifically

enumerated therein, now including home equity loans.  Tex. Const.

art. XVI § 50(a).  Specifically, section 50 exempts from

homestead protection an extension of credit that "is secured by a

voluntary lien on the homestead created under a written agreement

with the consent of each owner and each owner's spouse," that
meets other enumerated requirements.  Id. at § 50(a)(6)(A).

B.    Interpretative Regulations

The original 1997 constitutional amendment failed to empower
any Texas administrative agency with rule-making authority over
the amendments.  Within a short time following enactment of the
amendment, four Texas financial agencies--the Texas Department of
Banking, the Texas Savings & Loan Department, the Office of
Consumer Credit Commissioner, and the Texas Credit Union
Department (the "Commissions")--jointly promulgated the
"Regulatory Commentary on Equity Lending Procedures"
("Commentary").  The Texas Supreme Court has recognized the
Commentary as persuasive authority.  Stringer v. Cendant Mortg.
Corp., 23 S.W.3d 353, 357 (Tex. 2000).

The Texas Constitution was amended again in 2003, delegating
to the Commissions "interpretive authority over the home equity
provisions."  Cerda v. 2004-EQR1 L.L.C., 612 F.3d 781, 787 (5th
Cir. 2010) (citing Tex. Bankers Ass'n v. Ass'n of Cmty. Orgs. for
Reform Now (ACORN), 303 S.W.3d 404, 407-08 (Tex. App.--Austin
2010, pet. granted)); Tex. Fin. Code §§ 11.308, 15.413.  The
Commissions then adopted a number of regulations interpreting the
home equity provisions, now codified in the Texas Administrative
Code.  ACORN, 303 S.W.3d at 408.

C.   <u>The Transactions Were Loan Modifications</u>

In their response plaintiffs summarize what they consider

the "one narrow" issue in this case:

> [M]ay the principal amount of a Texas home equity loan
> be increased through the transformation of past-due
> interest into principal without complying with all the
> requirements for making or refinancing a home equity
> loan under the Texas Constitution Art. XVI Section 50?

Pls.' Resp. to Def.'s Mot. to Dismiss ("Pls.' Resp.") at 1.

Plaintiffs would have the court answer this question in the

negative.   Defendant disagrees.

In the motion, defendant argues at length about how the

Texas Constitution and the regulations distinguish between a

modification of a home equity loan and a refinance, emphasizing

that both are permitted but have different requirements and

limitations.   Plaintiffs do not appear to dispute this general

proposition.   Plaintiffs instead take issue with defendant's

application of those terms to their home equity loan

transactions, alleging that defendant labeled the 2009 and 2011

transactions "modifications" when they were in fact refinancings.

Defendant first argues that the 2009 and 2011 transactions

involving plaintiffs' home equity loan clearly lie within the

following definition of a modification:

> A modification of a home equity loan occurs when one or
> more terms of an existing equity loan is modified, but
> the note is not satisfied and replaced. A home equity

loan and a subsequent modification will be considered a single transaction. The home equity requirements of Section 50(a)(6) will be applied to the original loan and the subsequent modification as a single transaction.

7 Tex. Admin. Code § 153.14(2). According to defendant, plaintiffs' 2009 and 2011 modifications were not refinances because they did not "satisfy and replace" the original home equity note. The plain language of the loan modification documents support this contention. As stated in the 2009 modification papers:

> 2.   All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as modified herein, and none of your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect and [sic] of [defendant's] rights under or remedies on your Note and Mortgage, whether such rights or remedies arise thereunder or by operation of law.

App. in Supp. of Def.'s Mot. to Dismiss Pls.' First Am. Compl. ("Def.'s App.") at 24. And in the 2011 modification papers:

> G.   [A]ll terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and [] except as otherwise specifically provided in, and expressly modified by, this Agreement, the Lender and you will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

Id. at 28.   In defendant's view, because the modification
agreements by their terms did not satisfy or replace the note,
they cannot, by definition, be a refinance of the loan.

In response, plaintiffs agree that the 2009 and 2011
transactions did not satisfy and replace the note.   The problem,
in plaintiffs' view, is that at the time of those transactions
defendant should have satisfied and replaced the note because
those transactions were refinances, not modifications.   As one of
the grounds in support of their claim plaintiffs contend that
defendant used the wrong form because the modification papers do
not use the term "home equity" but only refer to the "mortgage"
and the "note."   Although plaintiffs question why defendant did
not use a standardized home equity form, they have directed the
court to no authority requiring such use.   The court finds that
the plain language of the 2009 and 2011 documents shows no
intention by the parties to satisfy and replace the original
note, causing the 2009 and 2011 transactions to fall within the
definition or description of a "modification" in 7 Tex. Admin.
Code § 153.14(2).

Defendant also argues that plaintiffs have failed to state a
claim for relief on their claim that capitalizing past-due
interest and adding to the principal constitutes an advancement
of funds, which is prohibited in the modification of a home

10

equity loan.  7 Tex. Admin. Code § 153.14 (2)(B).  Defendant
relies on Meador v. EMC Mortgage Corp., 236 S.W.3d 451 (Tex.
App.--Amarillo 2007, pet. denied), as support for its definition
of the term "advance of additional funds."  The plaintiffs in
Meador obtained an unsecured loan but were also required by the
lender to refinance their home mortgage.  Meador, 236 S.W.3d at
452.  The unsecured loan was later acquired by the defendant.
Id.  The plaintiffs claimed that the defendant should be required
to forfeit the principal and interest on the unsecured loan
because it failed to comply with the requirements of article XVI
§ 50(e).  Id.  In that context, the court was asked to construe
the term "advance of additional funds" as used in section 50(e),
pertaining to the refinance of a home equity loan.  The court
concluded that "'additional funds' are monies obtained in excess
of the pre-existing debt being refinanced."  Id. at 453.

    As plaintiffs point out, Meador is factually distinguishable
from the instant action and is of limited usefulness in this
action.  However, the court finds it unnecessary to rely on the
definition in Meador, because a common-sense reading of the term
"additional funds" would appear to contemplate money provided by
the lender to the borrower over and above the amount already
loaned, that the borrower could use for other purposes at his or
her discretion.  There is no allegation in the First Amended

11

Complaint that plaintiffs received any monies from defendant over and above that originally provided to them by the home equity loan.  Rolling their past-due interest into the principal in 2009 and 2011 gave plaintiffs no extra cash to do with as they wished. The court concludes that the prohibition against advancing additional funds in 7 Tex. Admin. Code § 153.14(2)(B) does not apply to the circumstances forming the basis of plaintiffs' claims.

The court finds nothing persuasive in the authorities cited by plaintiffs in support of their various arguments.  Plaintiffs refer the court to Ray v. Wells Fargo Bank, N.A., No. 4:11cv91, 2012 WL 602212 (E.D. Tex. Jan. 27, 2012), report and recommendation adopted, Ray v. Wells Fargo Bank, N.A., No. 4:11-CV-91, 2012 WL 602208 (E.D. Tex. Feb. 23, 2012), as an example of "other decided Section 50 cases."  Pls.' Resp. at 12. However, the only issue in Ray was the defendant's motion for judgment on the pleadings as to plaintiff's claims under the Fair Credit Reporting Act.  Ray, No. 4:11cv91, 2012 WL 602212 at *2. The only mention of section 50 in Ray was a reference to a state court case involving the same parties where the state court declared void plaintiff's home equity lien for failure of defendant to comply with section 50(a)(6)(I), pertaining to the agricultural exclusion.  Id. at *1.

Plaintiffs also rely on provisions of a Home Equity Modification Advisory Bulletin ("Advisory Bulletin") disseminated by the Commissions in April 2009, which plaintiffs claim "endorsed" certain methods for modifying home equity loans. The Advisory Bulletin provides an express disclaimer as to the weight of its own authority:

> This statement on Article XVI Section 50(a)(6)(L) is not meant to negate the applicability or legality of any other method of modifying a home equity loan. This statement is solely meant to endorse the permissibility of the following method. Any modification must also comply with any applicable federal and state laws. This statement is not an interpretation of the Texas Constitution and is not being issued under Texas Finance Code, § 11.308 and § 15.413.

Def.'s App. at 46 (emphasis in original). While the Advisory Bulletin's purpose was to propose a method of modifying home equity loans for use by lenders, by its terms it did not prohibit the use of any other lawful modification method. Although the court may consider the Advisory Bulletin for whatever informational or persuasive value it may possess, it does not bear the weight of the administrative regulations, and does not prohibit the manner in which defendant modified plaintiffs' loan.

Although plaintiffs advance a number of interesting theories to support their claims, they have provided the court no legal authority that would persuade the court that plaintiffs have

stated a plausible claim that capitalizing past-due interest and adding that amount to the principal of a home equity loan violates the Texas Constitution.  The court concludes as a matter of law that the 2009 and 2011 transactions were modifications, not refinances, of plaintiffs' home equity loan.

D.   Section 50(a)(6)(B) Does Not Apply to
     Home Equity Loan Modifications

The court finds similarly lacking plaintiffs' contention that the modifications violated the constitution because they featured a loan-to-value ratio in excess of eighty percent. Plaintiffs do not dispute that the loan-to-value ratio at the time of the original home equity loan complied with the eighty-percent limitation.  However, plaintiffs contend that at the time they signed the September 25, 2009 modification their loan-to-value ratio was greater than 100 percent, while at the time of the December 2011 modification it was 110 or 103.8 percent, depending on which property appraisal was used in the calculation. [1]

Section 50(a)(6)(B) requires that a home equity loan be:

of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of

---

[1]Plaintiffs claim that at the time of the 2009 modification their property was appraised at $72,300, and the modification increased the principal of the loan to $74,345.50.  In November 2011 Tarrant County appraised their property at $73,000, while defendant appraised their property at $76,100, and the principal of the loan increased to $80,023.95.

> record against the homestead does not exceed 80 percent
> of the fair market value of the homestead on the date
> the extension of credit is made[.]

Tex. Const. art. XVI § 50(a)(6)(B).  The applicable

administrative regulation is similar:

> An equity loan must be of a principal amount that when
> added to the aggregate total of the outstanding
> principal balances of all other indebtedness secured by
> valid encumbrances of record against the homestead does
> not exceed 80 percent of the fair market value of the
> homestead on the date the extension of credit is made.

7 Tex. Admin. Code § 153.3.  Resolution of the dispute concerning

the loan-to-value ratio thus requires the court to determine what

section 50(a)(6)(B) means when it refers to "the date the

extension of credit is made."  Defendant argues that the phrase

refers to the date of the original home equity loan, whereas

plaintiffs contend it applies to each new "credit event."

Plaintiffs maintain that defendant was required to consider the

loan-to-value ratio each time defendant offered plaintiffs a loan

modification; however, its failure to do so resulted in a loan-

to-value ratio at the time of each modification that exceeded the

eighty-percent limit.  The court is persuaded that defendant has

advanced the correct interpretation.

Defendant argues that the phrase "on the date the extension

of credit is made" applies to three variables identified in

section 50(a)(6)(B):  (1) the principal amount of the home equity

loan; (2) the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances against the homestead; and (3) the fair market value of the homestead.   While defendant's argument is persuasive, the court concludes that a straightforward consideration of the text of section 50 and the administrative regulations all lead to but one reasonable conclusion:   the phrase "on the date the extension of credit is made" refers to the date of the original home equity loan and not to each subsequent modification.

The text of article XVI and of the regulations support defendant's argument that the constitutional amendment and regulations, in other sections, consistently look to the amount of principal at the time of the original home equity loan, and that therefore the drafters intended such would be the case under section 50(a)(6)(B).   For example, the Texas Constitution requires the lender to provide certain written disclosures to the borrower no less than twelve days before closing.   The disclosure pertaining to the loan-to-value ratio states:

> "(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN
> IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO
> THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR
> HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE
> OF YOUR HOME[.]

Tex. Const. art. XVI § 50(g) (emphasis added).   The only common-sense reading of the phrase "at the time the loan is made" is

that it means the date of the original home equity loan.   The

regulations interpreting the eighty-percent loan-to-value ratio

further explain that

> (1) The principal amount of an equity loan is the sum
>     of:
>     (A) the amount of the cash advanced; and
>     (B) the charges <u>at the inception of an equity loan</u>
>     to the extent these charges are financed in the
>     principal amount of the loan.

7 Tex. Admin. Code § 153.3(1).   "Inception" means the

"beginning," <u>Black's Law Dictionary</u> (6th ed. 1990), logically

referring to the date of the original loan.   And, in discussing

the date on which a payment is due following a home equity loan

modification, the Advisory Bulletin notes that "[t]he date of the

modification is not the date that the original extension of

credit is made."   Def.'s App. at 47.

Defendant also points to the regulation's explanation of

what is not included in the principal amount of the home equity

loan:

> (3) The principal amount of an equity loan does not
> include interest accrued after the date the extension
> of credit is made (other than any interest capitalized
> and added to the principal balance on the date the
> extension of credit is made), or other amounts advanced
> by the lender after closing as a result of default,
> including for example, ad valorem taxes, hazard
> insurance premiums, and authorized collection costs,
> including reasonable attorney's fees.

Id. at (3).   Although the parties posit differing interpretations
of the parenthetical language included in section 153.3(3) above,
the court concludes that defendant's interpretation is correct:
the exception applies only when interest that will accrue after
the date of closing is capitalized and added to the principal on
the date of closing.

Plaintiffs rely on a different section of the regulations to
support their interpretation of the eighty-percent rule.   Section
153.14(2)(C) states:

> (C) A modification of an equity loan may not provide
> for new terms that would not have been permitted by
> applicable law at the date of closing of the extension
> of credit.

7 Tex. Admin. Code § 153.14(2)(C).   When compared to the
aforementioned authorities, the court finds this nonspecific
provision of the regulations insufficient to overcome what seems
to be a clear intent in the constitution and regulations to limit
application of the eighty-percent loan-to-value ratio to the date
of the original home equity loan.   The court notes that section
153.14(2)(D) specifies that the "3% fee cap required by Section
50(a)(6)(E) applies to the original home equity loan and any
subsequent modification as a single transaction."   The drafters
of the regulations apparently knew how to specify that certain
provisions of section 50 applied to modifications as well as to

the original loan.  They could have imposed the same express restriction regarding the eighty-percent loan-to-value ratio had they intended it to apply at the time of a home equity loan modification.

Considering all of the foregoing, the court concludes that the "date the extension of credit is made," as contemplated by section 50(a)(6)(B), refers only to the date of the original home equity loan, rather than the date of each subsequent modification, and that defendant was required to consider the eighty-percent loan-to-value ratio only on the date plaintiffs obtained the original home equity loan.[2]  Because it is undisputed that the loan-to-value ratio on the date plaintiffs originally obtained their home equity loan complied with the eighty-percent limit, plaintiffs have failed to state a claim for relief under section 50(a)(6)(B).

E.   No Violation of Article XVI Sec. 50(a)(6)(F)

One constitutional limitation on a home equity loan is that it cannot be

> a form of open-end account that may be debited from time to time or under which credit may be extended from time to time unless the open-end account is a home equity line of credit[.]

--------

[2]Because the court has determined that the transactions at issue were modifications, rather than refinances, the court is expressing no opinion on whether the loan-to-value ratio must be considered at the time of a refinance of a home equity loan.

Tex. Const. art. XVI § 50(a)(6)(F).   Plaintiffs allege that the 2009 and 2011 loan modifications were "a form of open-end account under which credit was extended from time to time but which was not a valid home equity line of credit under other provisions of the Texas Constitution."   First Am. Compl. at 6.   The factual allegations in the First Amended Complaint fail to support this claim.

No definition of "open-end account" is found in the Texas Constitution.   However, the Texas Finance Code defines an open-end account as

> an account under a written contract between a creditor and an obligor in connection with which:
>
> > (i) the creditor reasonably contemplates repeated transactions and the obligor is authorized to make purchases or borrow money;
> >
> > (ii) interest . . . may be charged from time to time on an outstanding unpaid balance; and
> >
> > (iii) the amount of credit that may be extended during the term of the account is generally made available to the extent that any outstanding balance is repaid. . . .

Tex. Fin. Code § 301.002(a)(14).   The same definition is found in the Commentary.

Absent from the First Amended Complaint are any facts that could possibly be construed as alleging that the modifications of plaintiffs' home equity loan created any form of open-end

20

account.  The court has reviewed in detail the loan modification documents and has found nothing therein that would entitle plaintiffs to debit the account from time to time, or that provides for an extension of credit from time to time, as contemplated by section 50(a)(6)(F).[3]  Nor does the court find any provision in the loan modification documents that in any way contemplates repeated transactions, authorizes plaintiffs to make purchases or borrow money thereunder, or that makes available to plaintiffs additional credit to the extent they have repaid any outstanding balance.  Instead, the loan modification documents clearly contemplate a fixed schedule of payments, for a defined period of time, with a decreasing principal balance following each month's payment.

In response plaintiffs essentially argue that because the loan modification documents do not expressly limit or rule out repeated transactions, defendant could continue to issue endless loan modifications.  In such a scenario, plaintiffs contend, "[t]he increases to principal, plus the lack of any limitation on future increases to principal, renders [defendant's] practice 'a

---

[3]Although not dispositive, the court notes that the original Texas Home Equity Note by which plaintiffs obtained their home equity loan expressly states that it "is not an open-end account that may be debited from time to time or under which credit may be extended from time to time." Def.'s App. at 1. Nothing in either the 2009 or 2011 loan modification documents purports to modify that limitation.

form of open-end account.'"   Pls.' Resp. at 22 (emphasis in original).

The court finds this argument unavailing.  In constructing this argument plaintiffs have focused on three words in section 50(a)(6)(F)--"a form of"--and ignored the remainder of the constitutional description of an open-end account.  A common-sense interpretation of the entire phrase "form of open-end account" still requires that the account in question be an open-end account.  See Commentary, Def.'s App. at 53 ("If an account is not an open-end account by definition, then it must be a closed account.").  Plaintiffs in their response failed to direct the court to any language in the 2009 or 2011 loan modification documents that they contend transforms the modifications into an open-end account as contemplated by section 50(a)(6)(F).  No reasonable reading of the constitutional language or regulations can transform plaintiffs' home equity loan modifications into any "form of open-end account."

F.   No Violation of Art. XVI Sections 50(f) or (g)

Section 50(f) requires that any refinancing of a home equity loan "may not be secured by a valid lien against the homestead unless the refinance of the debt is an extension of credit described by Subsection (a)(6) or (a)(7) of this section."  Tex. Const. art. XVI § 50(f).  Section 50(g) further requires that at

22

least twelve days before closing the lender must provide the home equity borrower with a separate written notice describing the requirements and restrictions imposed by section 50(a)(6).

Plaintiffs' claims under these sections of the Texas Constitution arise from their contention that the 2009 and 2011 modifications were really refinancing events subject to the requirements of section 50(f) and requiring defendant to provide the disclosures contemplated by section 50(g).  The court has concluded, as discussed _supra_, that the transactions at issue were modifications of plaintiffs' home equity loan, not refinances.  Accordingly, sections 50(f) and (g) are inapplicable, and plaintiff has failed to state a claim on which relief could be granted as to those sections.

* * * *

Bearing in mind the standards for a motion to dismiss pursuant to Rule 12(b)(6), the court finds that the First Amended Complaint is comprised primarily of the kinds of conclusory assertions, labels, and conclusions which the court need not accept as true, and that plaintiffs have failed to allege sufficient facts as would state any claim for relief that is plausible on its face.

V.

Order.

Therefore,

The court ORDERS that defendant's motion to dismiss be, and
is hereby, granted.

The court further ORDERS that all claims and causes of
action brought by plaintiffs, Frankie Sims and Patsy Sims,
against defendant, Carrington Mortgage Services, LLC, be, and are
hereby, dismissed with prejudice.

SIGNED August 23, 2012.


_____
JOHN McBRYDE
United States District Judge